David C. O'Mara
Email: david@omaralaw.net
THE O'MARA LAW FIRM
311 E. Liberty Street
Reno, NV 89501
Tel.: (775) 323-1321

Jeffrey M. Norton, Esq.
Email: jnorton@nflp.com
NEWMAN FERRARA LLP
1250 Broadway, 27th Floor
New York, NY 10001
Tel.: (212) 619-5400
Fax: (212) 619-3090

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| JOHN SOLAK, derivatively on behalf of RING ENERGY, INC., <br><br> Plaintiff, <br><br> LLOYD T. ROCHFORD, KELLY HOFFMAN, DAVID A. FOWLER, STANLEY M. MCCABE, ANTHONY B. PETRELLI and CLAYTON E. WOODRUM, <br><br> Defendants, <br><br> -and- <br><br> RING ENERGY, INC., a Nevada Corporation, <br><br> Nominal Defendant. | Case Number: 3:19-cv-410 <br><br> **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

Plaintiff John T. Solak ("Plaintiff"), for his opposition to the Motion to Dismiss of Defendants Lloyd T. Rochford, Kelly Hoffman, David Fowler, Stanley McCabe, Anthony B. Petrelli, and Clayton E. Woodrum (the "Director Defendants") and Nominal Defendant Ring Energy, Inc. ("Ring") (collectively, "Defendants") states to the Court as follows.

**PRELIMINARY STATEMENT**

Defendant Ring is a Nevada corporation, with its principal place of business in Midland, Texas, and operates as an oil and gas exploration, development, and production company. As described in Plaintiff's Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Unjust Enrichment, and Waste of Corporate Assets (the "Complaint")[Doc. No. 1-2], the members of Ring's Board of Directors (the "Board") award themselves compensation that is grossly disproportionate – by a factor of *six times* – to similarly-sized, publicly traded companies (*i.e.*, "peers"). For example, in 2017, the Director Defendants awarded themselves compensation averaging $725,421, per director (equaling $4.3 million in total Board compensation). To put that figure in perspective, the average compensation for a director at Exxon Mobil Corporation (a company approximately 1500 times larger than Ring with billions in net income) was roughly half that of the Director Defendants during the same period. And, if the level of Board compensation is not shocking enough in its own regard, it is downright obscene considering Ring's net income for 2017 was only $1.7 million. Stated otherwise, in 2017, the Director Defendants saw fit to award themselves compensation ***two and a half times more*** than Ring's entire net income.

Ring shareholders do not have any say in director pay and Ring's director compensation program has never been presented to stockholders for approval. Instead, the Board retains total and unfettered discretion to award its members whatever level of compensation it desires and it has availed itself of that right with abandon. What is more, unlike virtually every other publicly traded company following best practices and corporate standards, Ring directors, who also serve as corporate officers (*i.e.*, Director Defendants Hoffman and Fowler), are permitted to profit doubly by taking compensation as officers *and* directors. Yet, this double-dipping is obscured by the fact that Ring's Annual Proxy statements fail to properly disclose and explain the compensation these Director Defendants are taking in their respective corporate roles.

2

As Defendants correctly point out, Nevada law requires that, to survive a motion to dismiss, a shareholder derivative complaint must demonstrate demand futility, by showing that: (a) a majority of the a company's directors breached their fiduciary duty; and (b) that such breach involved intentional misconduct, fraud, or a knowing violation of the law. As alleged in the Complaint, as argued herein, and as supported by controlling authority, self-interested compensation decisions of this nature and magnitude constitute breaches of fiduciary duty and cannot occur in the absence of intentionality and bad faith. Accordingly, the Complaint satisfies Nevada's standard for demonstrating demand futility and, as a result, Defendants' Motion should be denied.

Defendants' primary argument is not that Plaintiff failed to plead demand futility, and Defendants do not even attempt to argue that Plaintiff has failed to set forth claims for breach of fiduciary duty, unjust enrichment, corporate waste, and violations of Section 14(a) of the Exchange Act; rather, Defendants' "gotcha" argument is that Plaintiff failed to specifically allege the date he acquired Ring stock. Without debating whether the law requires that level of specificity, Defendants are correct. While Plaintiff alleged he held Ring stock at the time of the wrongdoing alleged in the Complaint (which is ongoing), and continues to hold Ring stock, he did not specifically state that he acquired his shares. In any event, Plaintiff does not lack standing and, as the very case law cited by Defendants supports, the non-substantive error can be remedied through supplemental pleading.[1] Accordingly, dismissal on that basis is not appropriate.[2]

---

[1] *See In re RINO Intern. Corp. Derivative Litigation*, 2011 WL 5245426, at *2 (D.Nev., 2011).
[2] Indeed, nothing prevents the Court from, prior to such an amendment, considering the remaining arguments contained herein. *See in re Asyst Techs., Inc. Derivative Litig.*, 2008 WL 2169021, at * 1 (N.D.Cal. May 23, 2008); *in re Verisign, Inc., Derivative Litig.*, 531 F.Supp.2d 1173, 1202 (N.D.Cal.2007) (considering other dismissal arguments while allowing plaintiff to amend), *cited with approval in Sokolowski v. Adelson*, 2014 WL 3748191, at *3 (D. Nev. July 30, 2014).

3

**RELEVANT BACKGROUND**

The Ring Board is comprised of the following individuals:
- Lloyd T. Rochford – Chairman of the Board, Chairman of the Compensation Committee
- Kelly Hoffman – Chief Executive Officer, Member of the Board
- David A. Fowler – President, Member of the Board
- Stanley McCabe – Member of the Board, Member of the Compensation Committee
- Anthony B. Petrelli – Member of the Board
- Clayton E. Woodrum – Member of the Board

Compl. ¶¶ 7-12. From the start of fiscal 2014, the average annual compensation paid to each of the aforementioned Director Defendants has been $479,031. In fiscal 2016 and 2017, alone, the average compensation was $717,421 per director (2016) (totaling $4.3 million) and $725,421 per director (2017) (again, totaling $4.3 million). Compl. ¶25. Yet, in fiscal 2016, the Company recorded a net loss, and, in fiscal 2017, it recorded net income of only $1.7 million. Compl. ¶¶ 26-26. In other words, in 2017, Ring's director compensation was more than two-and-one-half times Ring's entire net income.

To understand just how shocking Ring's compensation practices are, one need only look at those practices in comparison to several of the largest energy companies. For instance, for fiscal year 2017: the non-employee directors of Exxon Mobil Corporation (the world's largest oil and gas company) received average compensation $364,000;[3] Chevron Corporation's non-employee directors averaged $375,000;[4] and Valero Energy's non-employee directors averaged $314,035.[5] Of course, Ring is no Exxon Mobil, Chevron or Valero, each of which has a market cap in the billions. To the contrary, it is a micro-cap energy company with a market cap of some

---

[3] *See* Exxon Mobil's Proxy Statement, pg. 22, available at:
https://www.sec.gov/Archives/edgar/data/34088/000119312518115091/d527562ddef14a.htm
[4] *See* Chevron Corporation's Proxy Statement, pg. 15, available at:
https://www.sec.gov/Archives/edgar/data/93410/000119312518112804/d475585ddef14a.htm#toc475585_16
[5] *See* Valero Energy's Proxy Statement, pg. 55, available at:
https://www.sec.gov/Archives/edgar/data/1035002/000119312518090034/d513817ddef14a.htm#toc513817_48

$100 million. According to the NACD 2017-2018 Director Compensation Report, companies with market caps of between $50 million and $500 million have average director compensation of $123,230 – roughly 17% of what was paid to Ring's directors in 2016 and 2017. In other words, Ring's directors receive compensation 600% more than similarly-sized companies. Compl. ¶ 19 at fn. 2.

The exorbitant compensation is not the only disconcerting practice at Ring. Indeed, unlike virtually all other publicly traded companies which avoid compensating executive directors, the Board sees fit to compensate those Ring directors who also serve as corporate officers (*i.e.*, Messrs. Hoffman and Fowler) for their roles as officers *and* directors. Compl. ¶¶ 29-30. In what appears to be an effort to obscure their double-dipping, for each year since 2015, Ring's Director Compensation Table has failed to accurately disclose that Hoffman and Fowler are receiving compensation as directors. Compl. ¶ 33-34.

## ARGUMENT

### A. Excessive Compensation Constitutes a "Bad Faith and Intentional Misconduct" Under Nevada Law, Sufficient to Demonstrate Demand Futility

To demonstrate that demand on the board of directors of a Nevada corporation would be futile, a shareholder must allege that "the director's or officer's act or failure to act constitute a breach of his or her fiduciary duties as a director or officer and (b) the breach of those duties involved intentional misconduct, fraud or a knowing violation of the law." Nev. Rev. Stat. § 78.138(7). Under Nevada law, a judicial determination of excessive compensation suffices to meet both prongs. *Bedore, derivatively on behalf of Silver State Gambling, Inc. v. Familian*, 122 Nev. 5 (2006) ("[I]n its findings of fact and conclusions of law, the district court found that Familian's and Athey's actions in taking excessive salaries constituted bad faith and intentional misconduct.").

The district court opinion in *Bedore* is instructive. In that action, the Court was called upon to examine compensation paid to two directors – Familian and Athey – of a Nevada corporation ***following a bench trial***. *See Bedore v Familian*, 2003 WL 25788478 at 1, 5 (Nev. Dist. Court 2003).[6] Because the *Bedore* court described the analysis of director compensation in detail (and given the relative paucity of Nevada law on the subject), its analysis is important to review, at length. The *Bedore* court wrote:

> Employees who do comparable work for similar corporations in the same industry receive far less than the salaries that Familian and Athey granted themselves. None of the evidence of comparable salaries presented by the defendants' experts included salaries by a comparable gaming corporation. However, the chief operating officer for ETT – the corporation that actually does the work for Silver state – oversees all of ETT's operations, which includes 6,000 gaming machines in 600 different locations and 1,200 employees, received total annual compensation of approximately $200,000, which includes his bonus. Whereas, Familian and Athey take combined salaries of $425,000 for overseeing fifty-six machines in eight locations with no employees (other than themselves) and they subcontract out all the actual work and services to ETT. Neither Familian nor Athey has any special ability which is valuable to Silver State, and their duties and responsibilities on behalf of Silver State are not difficult and do not take a substantial amount of time. ***The Court finds that the $425,000 in annual salaries Familian and Athey granted themselves amounts to waste, because the salaries are clearly unreasonable and excessive*** ….
>
> In addition, the Court finds that Familian [sic] and Athey's decision (as the only officers and directors of the company) to take yearly combined salaries of $ 425,000 was ***intentional misconduct***, was not made in good faith, and that Familian and Athey could not have reasonably believed that their decision was in the best interest of Silver State.

*Bedore*, at 5-6 (emphasis added). Accordingly, the *Bedore* court reached the following conclusion of law:

> The plaintiff has proven by a preponderance that the defendants owed fiduciary duties to Silver State, that they breached their fiduciary duties, and that Silver State suffered damage as a proximate and actual cause of the defendants' breach.

*Id.*, at 7. On appeal, the Nevada Supreme Court upheld the trial court's finding that the director

---

[6]  Although the *Bedore* opinion is available on Westlaw, that version is unpaginated. For the ease of the Court, an official copy of the *Bedore* court's findings of law and conclusions of fact is being submitted contemporaneously hereto.

compensation was excessive. *Bedore*, 122 Nev. at 14-15.

There are numerous takeaways from *Bedore*. First, and most importantly, is that in *Bedore*, under Nevada law, a determination of whether compensation is excessive, such that there is a finding of a breach of fiduciary duty and intentional misconduct, took place following *a trial* at which evidence was introduced and weighed. It would be entirely premature then, to rule at the dismissal stage, that Plaintiff may not proceed on a breach of fiduciary duty claim, where the complaint identified excessive compensation.

Second, the court in *Bedore*, *at trial*, compared the compensation awarded to the defendants therein to other companies in the industry, and found the defendants' compensation excessive. Here, Plaintiff similarly compared the Defendants' compensation, and found that it was more than twice that of directors at companies like Exxon Mobil, and 600% higher than similarly sized companies. If such evidence is sufficient to prevail *at trial*, it should more than suffice to survive a motion to dismiss.

Third, the court in *Bedore* required the defendants to *demonstrate* "special abilities" and/or "difficult duties" justifying compensation in excess of their peers. Here, despite having the burden to demonstrate what special abilities they have, or difficult duties that they undertake, which would entitle them to compensation more than twice that of an Exxon Mobil director, Defendants have failed to do so. Indeed, Defendants make no justification for their salary and, as noted above, cite no substantive case law relieving them of the burden to do so.

Defendants' demand futility argument runs barely over a page and boils down to the premise that Plaintiff has not demonstrated demand futility because he did not mention Nevada Revised Statute § 78.138(7). Why failing to cite a statute on demand futility demonstrates that demand futility is not met, Defendants do not say. Nor, other than Defendants' bald assertion that

"Plaintiff's allegations fall far short of this standard" do Defendants even address demand futility. More is certainly required to mandate dismissal of Plaintiff's Complaint.[7]

Under clear Nevada authority, upheld by the Nevada Supreme Court, Plaintiff has sufficiently demonstrated demand futility and intentional misconduct, and, thus, should be allowed to proceed on behalf of Ring's shareholders.

### B. Count Four Should Stand

Other than asserting that Count Four (for Violation of Section 14(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder) does not suffice to demonstrate demand futility, Defendants fail to make any substantive argument requiring dismissal of that count. Notably, Plaintiff's assertion that Ring's proxy statements are false and misleading is completely unrebutted. In any event, as described in the Complaint, the Company's misleading proxy statements that form the gravamen of Count Four are an offshoot of the Director Defendants' overall compensation scheme. Compl. ¶¶ 30-36. As discussed above, the Director Defendants' excessive compensation itself gives rise to demand futility, and that determination similarly relates to any and all claims directly related to such excessive compensation, including Count Four.

Accordingly, Defendants' request to dismiss Count Four, should be denied.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order denying Defendants' Motion, and for such other relief the Court deems just and proper.

---

[7] Indeed, Defendants' lone substantive case citation, to *In re ZAGG Inc. Shareholder Deriv. Action*, 826 F.3d 1222, 1230 (10th Cir. 2016), merely notes the legal truisms that a stockholder plaintiff must establish demand futility to possess derivative standing, and that a stockholder plaintiff must meet the standards of NRS §78.138(7), neither of which is in dispute. In any event, *Zagg* is unhelpful here, as it contains no mention of the role compensation plays in determining demand futility.

Dated:  October 14, 2019

            */s/ Jeffrey M. Norton*
Jeffrey M. Norton
**NEWMAN FERRARA LLP**
Email: jnorton@nfllp.com
1250 Broadway, 27th floor
New York, NY 10001
Tel.: (212) 619-5400

**THE O'MARA LAW FIRM**
David C. O'Mara
Email: david@omaralaw.net
311 E. Liberty Street
Reno, NV 89501
Tel.: (775) 323-1321

# CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2019, I electronically filed the foregoing Memorandum of Law in Opposition to Defendants' Motion to Dismiss with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

DATED: October 14, 2019                     */s/ Jeffrey M. Norton*
                                            Jeffrey M. Norton